394 A.2d 1348.

STATE *vs.* FRANK A. McGEHEARTY.

DECEMBER 5, 1978.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

Joslin, J.   In July 1976, a jury in the Superior Court found the defendant, Frank A. McGehearty, guilty of robbery and he appealed.

At about noon on January 17, 1976, defendant began drinking at the bar of a local hostelry. About 3 hours later, he departed, having by then, according to his testimony, consumed about 15 bottles of beer and a substantial amount of whiskey. There was also testimony that he continued his drinking at several neighborhood bars. Around 9 p.m. he entered a small convenience store in Providence, approached

the cashier, thrust his right hand into his pocket, and demanded the money in the cash register. The cashier handed him what currency was in the register. After rummaging through the receipts under the cash drawer looking for more money, defendant left the store. Shortly thereafter, he was apprehended by the police and in due course was indicted and tried for robbery.

At the trial in the Superior Court, defendant relied primarily on the defense of voluntary intoxication. Apparently he, as well as the prosecutor, assumed that the legal principles which controlled with respect to that defense were (1) that a specific intent to deprive another wholly and permanently of his property is an essential and indispensable ingredient of the crime of robbery;[1] (2) that voluntary intoxication to a degree that renders the accused incapable of feloniously intending to steal from another negates his ability to harbor the requisite intent and constitutes a complete defense to the charge;[2] and (3) that an accused who relies on the defense of voluntary intoxication bears the burden of proving that defense by a preponderance of the evidence.[3] The issues as originally briefed in this court assumed the validity of those principles.

At oral argument, however, the case took a different turn.

---

[1] In *State* v. *Reposa*, 99 R.I. 147, 149, 206 A.2d 213, 215 (1965) (quoting 4 W. Blackstone, Commentaries *241) robbery is defined as the " 'felonious and forcible taking from the person of another of goods or money to any value by violence or putting him in fear.' " *Cf. State* v. *Domanski*, 57 R.I. 500, 501, 190 A. 854, 855 (1937) (similar definition of robbery given).

[2] *State* v. *Turley*, 113 R.I. 104, 112, 318 A.2d 455, 459 (1974); *State* v. *Amaral*, 108 R.I. 755, 757, 279 A.2d 428, 429 (1971); *State* v. *Murphy*, 107 R.I. 737, 747-48, 271 A.2d 310, 316 (1970); *State* v. *Reposa*, 99 R.I. 147, 150-51, 206 A.2d 213, 215 (1965); *State* v. *Vanasse*, 42 R.I. 278, 281, 107 A. 85, 86 (1919).

[3] In *State* v. *Duffy*, 112 R.I. 276, 284-85, 308 A.2d 796, 801 (1973), we held that it was not error for the trial justice to charge that establishment of intoxication as a defense to a charge of breaking and entering with intent to commit larceny requires the defendants to prove their inability to have a specific intent to commit larceny by a preponderance of the evidence.

There, attention focused on *In re Winship*, 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970), a case decided more than 6 years prior to the trial of this case, and on *Mullaney v. Wilbur*, 421 U.S. 684, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975), that followed *Winship* by 5 years, but still preceded the trial in this case by more than a year. In *Winship*, 397 U.S. at 364, 90 S. Ct. at 1093, 25 L. Ed. 2d at 375, the Supreme Court ruled that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In *Mullaney*, 421 U.S. at 703-04, 95 S. Ct. at 1892, 44 L. Ed. 2d at 522, the Court relied on *Winship* and held unconstitutional a Maine law which required one accused of homicide to prove by a pre- ponderance of the evidence that the killing occurred in "the heat of passion on sudden provocation" so as to reduce his offense from murder to manslaughter.[4]

Using the *Winship* and *Mullaney* cases as his springboard, defendant at oral argument abandoned what until then had been his only asignments of error — that the trial justice, had he correctly viewed the evidence on intoxication, should either have granted his motion for a judgment of acquittal or, at least, granted him a new trial. But instead of pressing those assignments of error, defendant argued — and he sup- plemented those contentions in a brief filed subsequent to

---

[4]Two years after *Mullaney v. Wilbur*, 421 U.S. 684, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975) was decided, the Court in *Patterson v. New York*, 432 U.S. 197, 205-06, 97 S. Ct. 2319, 2324-25, 53 L. Ed. 2d 281, 289 (1977), upheld a New York statute which placed upon a defendant the burden of proving, by a preponderance of the evidence, that he acted under "extreme emotional disturbance" in order to reduce the offense from second degree murder to manslaughter. The court distinguished *Mullancy* from *Patterson*, in *In re John Doe*, 120 R.I. 732, 738, 390 A.2d 920, 924 (1978), by noting that in *Mullaney* the proof of "heat of passion" rebutted and could not coexist with proof of malice aforethought, an essential element of the crime of murder, whereas in *Patterson* proof of "extreme emotional disburbance" did not rebut or negate "any readily identifiable element" of that crime which the defendant was charged. Notwithstanding that distinction, it has been said that, in *Patterson*, the "Court sharply limited *Mullaney* and, with it, the expansive application of *Winship* which some had anticipated." *The Supreme Court, 1976 Term*, 91 Harv. L. Rev. 1, 94 (1977).

argument — that the trial justice's instruction to the jury placing the burden upon him to establish his intoxication by a preponderance of the evidence[5] violated his constitutional right, as enunciated in *Winship* and *Mullaney*, not to be convicted except upon the prosecution's proving every essential element of the offense charged beyond a reasonable doubt.

The state disputes this contention and, in its supplemental brief, asserts initially that *State* v. *Duffy*, 112 R.I. 276, 308 A.2d 796 (1973) controls. In that case this court refused to fault an instruction that in order for their defense of drug intoxication to be accepted, "defendants were bound to prove their inability to have a specific intent to commit larceny by the fair preponderance of the evidence." *Id.* at 284, 308 A.2d at 801. Because that instruction is substantially the same as that given in this case, we must now decide whether to follow or overrule *Duffy*.

We opt for the latter alternative. The rule in *Winship* is that the prosecution must prove every fact essential to the offense. A specific intent to steal is an essential element of the crime of robbery. Drunkenness will negate that specific

---

[5]The trial justice charged as follows:

"The defendant in this case claims that he is not guilty of either the crime of robbery or the crime of larceny from the person because he was so intoxicated that he did not, and could not form a criminal intent. In other words, he is telling you that he did not intend to commit a crime because he was so intoxicated. In this phase of the case, the burden of proof is upon the defendant to prove to you by a fair preponderance of the evidence that his intoxication was so complete as to negate his ability to formulate the requisite criminal intent. The element of intent to commit the crime charged in the Indictment may properly be found to be lacking only when the defendant's intoxication is so complete that he has become entirely incapable of forming the design with which he is charged. Voluntary intoxication does not excuse the commission of a crime and is not a defense to any crime actually committed. It may be offered, however, to negate the specific intent charged, but then, only when the drunkenness or intoxication is to such a degree as to completely paralyze the will of the defendant and to take from him the power to withstand evil impulses and render his mind incapable of forming any sane design.

intent when, as we said in *State* v. *Vanasse*, 42 R.I. 278, 281, 107 A. 85, 86 (1919), it "is of such a degree as to completely paralyze the will of the respondent, take from him the power to withstand evil impulses and render his mind incapable of forming any sane design." If defendant was so intoxicated as to be included within the *Vanasse* definition, he was incapable of entertaining the specific intent without which his guilt could not be established. Accordingly, because of the evidence defendant presented on the issue of intoxication, *Winship* and *Mullaney* controlled and the trial justice should have instructed the jury that the state was required to prove, beyond a reasonable doubt, that defendant was not so intoxicated as to be unable to harbor a specific intention to steal. *State* v. *Duffy, supra,* and the cases upon which it draws, must therefore be overruled to the extent they hold otherwise.

Although we find that the jury was incorrectly charged, there is another obstacle faced by defendant. He neither requested an instruction that it was the state's obligation to prove beyond a reasonable doubt that he was not so intoxicated, nor objected to the trial justice's instruction placing the burden of proving intoxication upon him. Under our established procedure, defendant's failure to object to the instruction given or to request a different one precludes, at least in ordinary circumstances, a challenge to the correctness or sufficiency of the charge given. *State* v. *Bowden*, 113 R.I. 649, 665, 324 A.2d 631, 641 (1974), *cert. denied*, 419 U.S. 1109, 95 S. Ct. 782, 42 L. Ed. 2d 805 (1975); *see* Super. R. Crim. P. 30. Where neither the objection nor the request has been made, the charge as given, even if erroneous, becomes the law of the case. *State* v. *Murphy*, 113 R.I. 565, 577, 323 A.2d 561, 567 (1974).

The defendant's challenge here, however belated it may have been, raises questions of possible violations of his basic constitutional rights. In regard to cases in that posture, the Supreme Court in *Fay* v. *Noia*, 372 U.S. 391, 438-39, 83 S. Ct. 822, 848-49, 9 L. Ed. 837, 686-69 (1963), held that a

criminal defendant's failure to comply with a state procedural requirement would not preclude an examination of his constitutional claims in a federal habeas corpus proceeding unless the noncompliance resulted from a deliberate bypass for strategical or other tactical reasons. *See Henry* v. *Mississippi,* 379 U.S. 443, 85 S. Ct. 564, 13 L. Ed. 2d 408 (1965).

In light of *Fay,* we held that given a similar scenario, despite an otherwise fatal procedural defect, we would consider a defendant's constitutional claim on direct review rather than require him to resort to post-conviction proceedings.[6]

We realize that *Fay* has been limited by the subsequent Supreme Court decision in *Wainwright* v. *Sykes,* 433 U.S. 72, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977), continuing a trend established in *Francis* v. *Henderson,* 425 U.S. 536, 96 S. Ct. 1708, 48 L. Ed. 2d 149 (1976), and *Davis* v. *United States,* 411 U.S. 233, 93 S. Ct. 1577, 36 L. Ed. 2d 216 (1973). In *Wainwright,* 433 U.S. at 90-91, 97 S. Ct. at 2506, 53 L. Ed. 2d at 610-11, the Court held that an accused who did not comply with a state's contemporaneous objection rule was not entitled to a federal habeas review of his claim that he did not comprehend a *Miranda* warning unless he showed both cause for his noncompliance and resulting prejudice.

It is not our task, however, to decide to what extent the Supreme Court has limited *Fay.* Instead, our only concern is whether the courts of this state will continue to permit criminal defendants to seek prompt vindication of their constitutional rights despite error in procedure made at trial.

---

[6]*State* v. *Walsh,* 113 R.I. 118, 122, 318 A.2d 463, 465 (1974); *State* v. *Maloney,* 109 R.I. 166, 174, 283 A.2d 34, 38 (1971); *State* v. *Carufel,* 106 R.I. 739, 746-47, 263 A.2d 868, 690 (1970); *State* v. *Lemme,* 104 R.I. 416, 422, 244 A.2d 585, 589 (1968); *State* v. *Franklin,* 103 R.I. 715, 718-19, 241 A.2d 219, 222 (1968); *State* v. *Leavitt,* 103 R.I. 273, 282-83, 237 A.2d 309, 315 *cert. denied,* 393 U.S. 881, 89 S. Ct. 185, 21 L. Ed. 2d 155 (1968); *State* v. *Quattrocchi,* 103 R.I. 115, 117 n.1, 235 A.2d 99, 101 n.1 (1967); *State* v. *Mendes,* 99 R.I. 606, 614-15, 210 A.2d 50, 55-56 (1965); *State* v. *Dufour,* 99 R.I. 120, 131, 206 A.2d 82, 88 (1965) (Joslin, J., concurring.).

Of course, like the plurality in the *Wainwright* case, we view

> "the trial of a criminal case in state court as a decisive and portentous event. A defendent has been accused of a serious crime, and this is the time and place set for him to be tried by a jury of his peers and found either guilty or not guilty by that jury. To the greatest extent possible all issues which bear on this charge should be determined in this proceeding: the accused is in the courtroom, the jury is in the box, the judge is on the bench, and the witnesses, having been subpoenaed and duly sworn, await their turn to testify. Society's resources have been concentrated at that time and place in order to decide, within the limits of human fallability, the question of guilt or innocence of one of its citizens. Any procedural rule which encourages the result that those proceedings be as free of error as possible is thoroughly desirable, and the contemporaneous-objection rule surely falls within this classification." *Id.* at 90, 97 S. Ct. at 2508, 53 L. Ed. 2d at 610.

Notwithstanding our acquiescence in those observations, we do not share the *Wainwright* conclusion that makes judicial review of a deprivation of a basic constitutional right, where a defendant has failed to comply with procedural requirement, depend upon the two-part "cause" and "prejudice" test. Instead, it is our judgment that review in that kind of case should be available if the failure to comply with the procedural requirement is not a "deliberate bypass," if it does not constitute "sandbagging" by a defense lawyer,[7] and if the record discloses that the breach complained of will constitute something more than harmless error. Moreover, that review may be on appeal from the judgment of conviction, rather

---

[7]The Supreme Court in *Wainwright* v. *Sykes*, 433 U.S. at 89, 97 S. Ct. at 2508, 53 L. Ed. 2d at 609, described sandbagging as "defense lawyers, who may take their chances on a verdict of not guilty in a state trial court with the intent to raise their constitutional claims * * * [later] * * * if their initial gamble does not pay off."

than upon post-conviction proceedings if the existence of those conditions are ascertainable from the record and without resort to an evidentiary hearing.

In this case no need for a post-conviction hearing has been demonstrated. The record is not reasonably susceptible of the inference that trial counsel's failure to object to the instruction given or to request a different one was dictated by trial strategy, that it was an attempt at "sandbagging," or indeed that it was attributable to a cause other than oversight or reliance on *State* v. *Duffy*, 112 R.I. 276, 308 A.2d 796. In addition, there was evidence of intoxication in this case which would support a finding that the state did not prove beyond a reasonable doubt that defendant specifically intended to steal. Therefore, the error complained of was not harmless.

[8] For the reasons stated, we conclude that once the defendant satisfied the burden of going forward with sufficient evidence to justify the existence of doubt on the issue of whether his intoxication was such as to negate his specific intent, it became the state's burden to establish that he was not so intoxicated by proof beyond a reasonable doubt. *See In re John Doe*, 120 R.I. 732, 390 A.2d 920 (1978). It would, indeed, be a harsh rule were we to insulate the constitutional violation complained of from judicial review. We refuse to do so at the state level.

The defendant's appeal is sustained, the judgment of conviction is reversed, and the case is remanded to the Superior Court for further proceedings.

*Julius C. Michaelson*, Attorney General, *John S. Foley*, Special Assistant Attorney General, for plaintiff.

*John A. O'Neill, Jr.*, for defendant.