STATE

v.

Carl J. THOMAS.

No. 2000–486–C.A.

Supreme Court of Rhode Island.

April 19, 2002.

Annie Goldberg/Aaron Weisman, Providence, for Plaintiff.

Thomas G. Briody, Providence, for Defendant.

Present WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

WILLIAMS, Chief Justice.

The applicant, Carl J. Thomas (applicant or Thomas), appeals a Superior Court trial justice's denial of his application for post-conviction relief. The applicant contends that his pleas of *nolo contendere* to charges of kidnapping, simple assault and battery, and three counts of sexual assault in the first degree were invalid because he was mentally impaired at the time of the plea hearing.

In 1994, Thomas allegedly kidnapped and physically and sexually assaulted his estranged wife, Barbara Thomas (wife). The applicant initially pled not guilty to the charges and a Superior Court jury trial commenced.

On June 1, 1995, direct examination of Thomas's wife was completed. The next day, before the start of trial proceedings, Thomas contacted his attorney, and informed her that he wished to change his plea from not guilty to guilty. The applicant told his attorney that he wished to change his plea to spare his wife from the ordeal of having to testify further. Against the advice of counsel, Thomas pled *nolo contendere* to each of the charges, even though the trial justice warned his counsel that the plea would be "open-ended."[1] Although Thomas understood there

1. An "open-ended" sentence contains no     agreement whatsoever as to a defendant's

would be no limitation on his sentence, he was resolute in his decision.

At the plea hearing, Thomas said that he made his plea knowingly and voluntarily. The trial justice, moreover, determined that Thomas understood the nature of the charges against him and that he had waived his rights to a trial. After the trial justice asked Thomas whether he was under the influence of any medication, however, he asserted, "[n]o, sir. I have been off my medicine." The trial justice then determined that Thomas had "the mental capacity to understand the nature of his plea" and the plea was accepted.

The applicant was sentenced to concurrent life sentences on each of the three counts of first-degree sexual assault and a consecutive twenty-year sentence for the count of kidnapping. The applicant also received a one-year sentence for the assault and battery count to be served consecutively to the counts of first-degree sexual assault. The applicant filed a motion to reduce the sentence which was denied by the Superior Court and affirmed by this Court on appeal. *See State v. Thomas*, 723 A.2d 788 (R.I.1998) (mem.). In January 1998, Thomas filed an application for post-conviction relief.

An evidentiary hearing was held in September 1998 to determine whether Thomas was mentally competent at the time he pled *nolo contendere* to the charges. The applicant presented two witnesses to support his position. First, applicant's counsel introduced James Greer, M.D. (Dr.

Greer), an expert in psychiatry who previously had treated Thomas. Doctor Greer explained that Thomas had a schizo-affective disorder, meaning he suffered from schizophrenia in combination with a mood disorder. Doctor Greer also asserted that applicant might suffer from hallucinations, delusions and disorganized thought processes. Doctor Greer testified that applicant had a recurrence of the psychotic symptoms when he stopped taking his anti-psychotic medication. Doctor Greer also testified that on June 2, 1995, Thomas was unable to make a knowing, voluntary and intelligent plea because he had not taken his anti-psychotic medication for several weeks before the hearing. Doctor Greer, however, admitted that he had not examined applicant on that day and was unable to quantify the degree of applicant's impairment at the time he made his plea.

The applicant also called his former attorney, who testified that she advised him that the plea was against his best interests. She said that Thomas appeared rational and determined to change his plea. She did not remember discussing whether he was taking any medication at the time, but she was aware that Thomas suffered from mental illness.

Ultimately, the trial justice denied Thomas's application, finding that he was mentally competent at the time of his plea. The applicant filed a timely notice of appeal.[2]

sentence. Consequently, a defendant may receive the maximum sentence allowable by law.

**2.** After the parties filed their briefs and appendices in this matter, but before we heard oral argument, applicant moved to strike those portions of the state's brief and appendix that referred to or included excerpts of transcripts from applicant's grand jury testimony and the hearing on applicant's motion

to reduce his sentence, neither of which were introduced into evidence or otherwise became part of the record on this appeal from the denial of Thomas's application for post-conviction relief. Because applicant is correct that these proceedings were not part of the record in this case on his application for post-conviction relief, we grant the motion and strike from the record on this appeal the

We will not disturb a trial justice's findings on an application for postconviction relief absent clear error or a showing that the trial justice overlooked or misconceived material evidence. *See Ouimette v. State,* 785 A.2d 1132, 1135 (R.I. 2001) (citing *Brennan v. Vose,* 764 A.2d 168, 174 (R.I.2001)). "However, questions of fact concerning whether a defendant's constitutional rights have been infringed, and mixed questions of law and fact with constitutional implications, are reviewed *de novo.*" *Id.* (citing *Powers v. State,* 734 A.2d 508, 514 (R.I.1999)). Finally, "[f]indings of historical fact, and inferences drawn from those facts, will still be accorded great deference by this Court, even when a *de novo* standard is applied to the issues of constitutional dimension." *Id.* (citing *Powers,* 734 A.2d at 514).

The applicant first argues that his plea was invalid because the plea colloquy did not address his mental illness despite his admission that he had been "off" his medication at the time of the hearing. We disagree.

It is well settled that "before accepting a plea of guilty or *nolo contendere,* the Superior Court justice [is] obliged to determine whether a criminal defendant was aware of the nature of a plea and its effect on his or her fundamental rights, including the right to a jury trial." *Ouimette,* 785 A.2d at 1135 (citing *Cole v. Langlois,* 99 R.I. 138, 206 A.2d 216 (1965)). In making that determination, "the court should advise and admonish the defendant about the nature of the charges and that this Court will look for record evidence to ascertain whether a criminal defendant was made aware of the consequences of a plea and the rights that the defendant was giving up, including the right to a jury trial." *Id.* at 1136 (citing *Cole,* 99 R.I. at

143–44, 206 A.2d at 219). Finally, the party challenging the validity of a plea has the burden of establishing "by a preponderance of the evidence, that he did not already understand the nature of the charges and the rights he was giving up, either through prior experience with the criminal courts of this state or by reason of having been so advised by counsel." *Id.* at 1136(citing *Hall v. Langlois,* 105 R.I. 642, 645, 254 A.2d 282, 284 (1969)). A plea of *nolo contendere* is valid only if it is voluntary and intelligent. *See State v. Figueroa,* 639 A.2d 495, 498 (R.I.1994).

Rule 11 of the Superior Court Rules of Criminal Procedure formalized the procedures of plea hearings to ensure that constitutional requirements were met. *See State v. Feng,* 421 A.2d 1258, 1266–67 (R.I.1980). According to Rule 11, the court may not accept a plea of *nolo contendere* "without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea." This Court reviews " 'the record as a whole and the circumstances in their totality' " to determine whether the plea has met the constitutional requirements. *See Feng,* 421 A.2d at 1267 (quoting *State v. Williams,* 122 R.I. 32, 42, 404 A.2d 814, 820 (1979)).

In the instant case, the trial justice's failure to respond to applicant's assertion that he was "off" his medication was not fatal to the validity of applicant's plea. Instead, a review of the transcript reveals that the requirements of Rule 11 were satisfied. The trial justice properly explained that the plea served as a waiver of Thomas's rights. Moreover, the trial justice methodically inquired into whether Thomas understood the nature and consequences of the charges against him. The

transcripts of those proceedings and any ref-     erences thereto in the state's brief.

trial justice then made "a finding of fact that [applicant] does understand the nature of each of these counts that have been lodged against him." Finally the trial justice stated "the [c]ourt, after conversing with the [applicant], is satisfied * * * [that he] understands * * * he is waiving all of his rights and he has done so willingly and voluntarily * * * [and] that he has the mental capacity to understand the nature of his plea."

■ The applicant also argues that his plea was invalid because he was mentally impaired at the hearing and thus was not competent to change his plea. We disagree.

■ The Supreme Court of the United States has held that to plead guilty, a defendant must demonstrate the same level of competence as is necessary to stand trial. *See Godinez v. Moran,* 509 U.S. 389, 398–99, 113 S.Ct. 2680, 2686, 125 L.Ed.2d 321, 332 (1993). Moreover, "[t]he focus of a competency inquiry is the defendant's mental capacity; the question is whether he has the *ability* to understand the proceedings." *Id.* at 401 n. 12, 113 S.Ct. at 2687 n. 12, 125 L.Ed.2d at 333 n. 12. It has long been recognized that "there are differing degrees and variations of mental illness, not all of which preclude criminal prosecution." *State v. Buxton,* 643 A.2d 172, 175 (R.I.1994) (citing *State v. Cook,* 104 R.I. 442, 445, 244 A.2d 833, 835 (1968)). This Court previously has determined that

"in order for a court to permit an accused to be subject to a criminal prosecution, 'three things must be found: first, that defendant understands the nature of the charges brought against him; second, that defendant appreciates the purpose and object of the trial proceedings based thereon; and third, that defendant has the mental capacity to assist reasonably and rationally his counsel in

preparing and putting forth a defense to the criminal charges of which he stands accused.'" *Id.* (quoting *Cook,* 104 R.I. at 447, 244 A.2d at 835–36).

We previously have determined that a defendant is subjected to a heightened standard of competency when he attempts to waive counsel and appear *pro se. See State v. Chabot,* 682 A.2d 1377, 1380 (R.I. 1996). Accordingly, we have said that for a defendant to voluntarily, knowingly and intelligently waive the right to counsel, this Court may consider:

"(1) the background, the experience, and the conduct of the defendant at the hearing, including his age, his education, and his physical and mental health; (2) the extent to which the defendant has had prior contact with lawyers before the hearing; (3) the defendant's knowledge of the nature of the proceeding and the sentence that may potentially be reimposed; (4) the question of whether standby counsel has been appointed and the extent to which he or she has aided the defendant before or at the hearing; (5) the question of whether the waiver of counsel was the result of mistreatment or coercion; and (6) the question of whether the defendant is trying to manipulate the events of the hearing." *State v. Briggs,* 787 A.2d 479, 486 (R.I. 2001) (quoting *Chabot,* 682 A.2d at 1380).

Finally, "[a] trial justice's decision regarding the defendant's competency will not be disturbed unless he or she clearly abused his or her discretion." *Buxton,* 643 A.2d at 175 (citing *Cook,* 104 R.I. at 447–48, 244 A.2d at 836).

As an initial matter, we note that applicant first alleged that he was mentally incompetent to plead *nolo contendere* approximately three years after his plea was accepted. The applicant failed to allege mental incompetence at the time of his

trial, his plea hearing or his motion to reduce sentence. Instead, Thomas first stated that he was mentally incompetent to plead guilty after his substantial sentence of life plus twenty years was solidified. Nevertheless, we address the merits of applicant's argument.

In the instant case, the trial justice did not abuse his discretion. Instead, the trial justice properly considered the testimony at the evidentiary hearing and determined that the applicant, who was at all times represented by counsel, was mentally competent to plead. In a written decision, the trial justice stated that the testimony of Dr. Greer was "an opinion not supported by the record in this case" and "was based on speculation on how the witness thought the [applicant] may have been on the date in question and as a result has no weight on the issue of the [applicant's] ability to make a knowing, willing and voluntary plea." Indeed, the record reveals that Dr. Greer testified that he could not offer an opinion about the degree of the applicant's impairment. Moreover, the trial justice explained that he had the opportunity to observe the applicant not only during the plea hearing, but also during the jury selection and the applicant's consultation with his lawyer during the direct examination of his wife. During the plea colloquy, the trial justice found the applicant's answers to be "entirely responsive, appropriate, intelligent and * * * in a knowing, willing, and voluntary manner." Finally, the trial justice remarked that "[t]here was not a scintilla of evidence that the [applicant] was laboring under a disability of any kind during the trial or the plea itself." Based upon the trial justice's extensive consideration of the applicant's demeanor and his opportunity to view the applicant in a variety of court proceedings, we determine that the trial justice did not abuse his discretion in finding the applicant mentally competent to plead.

Accordingly, Thomas's appeal is denied and dismissed. The judgment of the Superior Court is affirmed. The papers of the case are remanded to the Superior Court.